LAKE COUNTY BAR ASSOCIATION *v*. ROZANC.

[Cite as *Lake Cty. Bar Assn. v. Rozanc*, 123 Ohio St.3d 78, 2009-Ohio-4207.]

*Attorneys at law — Misconduct — Failure to act with reasonable diligence and promptness in representing a client — Failure to communicate with a client — One-year suspension with conditional six-month stay.*

(No. 2009-0679 — Submitted June 6, 2009 — Decided August 27, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 08-033.

_____

**Per Curiam**.

{¶ 1} Respondent, Frank J. Rozanc of Eastlake, Ohio, Attorney Registration No. 0047173, was admitted to the practice of law in Ohio in 1990. The Board of Commissioners on Grievances and Discipline recommends that we suspend respondent's license to practice for one year, staying the last six months of the suspension on remedial conditions, based on findings that he failed to diligently represent and properly communicate with a client serving as the executor of a decedent's estate. We accept the board's findings that respondent committed this professional misconduct and the recommendation for a one-year suspension and six-month conditional stay.

{¶ 2} Relator, Lake County Bar Association, charged respondent in a one-count complaint with violations of Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence and promptness in representing a client) and 1.4 (requiring a lawyer to keep the client reasonably informed about the status of a matter and comply as soon as practicable with any reasonable requests for information from the client [subsections (a)(3) and (4)]). A panel of three board members heard the case, including the parties' stipulations to the cited

misconduct, and made findings of fact, conclusions of law, and a recommendation for the one-year license suspension with a six-month conditional stay. The board adopted the panel's findings of misconduct and recommendation.

{¶ 3} The parties have not objected to the board's report.

**Misconduct**

{¶ 4} The charges against respondent stemmed from his representation of a client serving as executor of his mother's estate. Respondent and the client initially met several times in March or April 2007 at respondent's apartment, where he then had his business office, to discuss the estate and probate process. In mid-June 2007, the client, who had never before hired an attorney, paid respondent $500 in legal fees and $161 for probate court filing fees. The client also signed papers seeking to release the estate from probate administration. Respondent, however, never filed these documents in probate court, and at the panel hearing, he admitted to having done nothing else for his client.

{¶ 5} Describing the extent of respondent's neglect, the client testified that he heard from respondent "once or twice" by phone immediately after what turned out to be their last meeting but then never heard from him again. Calls to inquire about the status of the case and to see whether copies of the will had been mailed to siblings were not returned. The client called respondent initially once a week and, after several weeks passed, four to five times a week, always asking for a return call and never receiving a response. The client eventually left messages asking respondent to return the mother's will, even calling on weekends, still to no avail. The client stopped short of going to respondent's apartment, fearing that he would get "in trouble for harassment" for trying to see him at home.

{¶ 6} In conceding the serious and inexcusable failures on his part, respondent testified before the panel that he had become uncertain of whether the estate should be handled "via a release of administration or a more summary procedure." His research produced no definitive answer, and he felt he had no

other lawyer to ask. Respondent said that at that point, he "basically panicked and failed to do anything else."

{¶ 7} In late October 2007, after nearly four and one-half months trying to reach respondent, the client hired a new attorney. The new attorney called respondent once or twice, but respondent did not return any call from her. He claimed at the panel hearing that a message she left was "garbled" and unintelligible. The new attorney also wrote to respondent twice, asking that he deliver the will and return the balance of fees advanced by the client. She received no response. Respondent claimed that he did not receive her letters.

{¶ 8} Respondent's inaction held up proceedings in the estate until April 2008. The delay in opening the estate eventually caused several of the client's sisters to call the new attorney and complain. The sisters, who had become increasingly mistrustful of the lack of progress in the estate, also blamed their brother for the delay.

{¶ 9} The client ultimately filed a grievance with relator. Upon receiving a letter of inquiry in February 2008, respondent called the investigator, admitting that he had "screwed up" and had not known what to do to fix the situation. Respondent, who is disabled and unable to drive, agreed to drop off the will and related documents because the investigator feared that the documents could get lost in the mail. Respondent failed to drop off the papers, leaving the investigator to call his disconnected telephone three times during March 2008 and to write him two more letters, the last certified.

{¶ 10} The investigator finally received the original will in early April 2008 — by mail — along with respondent's check to the client for $686. During the panel hearing, respondent attributed his delay to a desire to return the papers and a refund at the same time and to his having misplaced his client trust account checkbook for several weeks. Included in the $686 payment to his former client

was an extra $25, intended to compensate the client for having to find new counsel.

**{¶ 11}** Respondent admitted that these acts and omissions violated his duties to diligently represent and communicate with his client as reasonably necessary under the circumstances. We thus find clear and convincing evidence that respondent violated Prof.Cond.R. 1.3 and 1.4(a)(3) and (4).

### Sanction

**{¶ 12}** In recommending a sanction for this misconduct, the board weighed the mitigating and aggravating factors in respondent's case and reviewed sanctions imposed in similar cases.

**{¶ 13}** As to mitigation, the board accepted the parties' stipulations that respondent had no prior disciplinary record, was not driven by dishonest or selfish motives, and had made restitution to his client. See BCGD Proc.Reg. 10(B)(2)(a), (b), and (c). Adopting the panel's report, the board also observed that respondent was a cooperative participant in this disciplinary proceeding. See BCGD Proc.Reg. 10(B)(2)(d). The board did not find a mitigating mental disability under BCGD Proc.Reg. 10(B)(2)(g)(i) through (iv), however, despite respondent's testimony concerning his depressed mental state.

**{¶ 14}** Respondent referred to a "general depression" that started "after [he] lost the office in January of '07 and onward." After his office closed, he had difficulty in obtaining new clients and getting existing clients to pay him. Respondent once saw a counselor, who he said "did not seem to believe it was anything chemical" but rather thought that it was more related to "what [he] was involved in." Respondent could not recall the counselor's qualifications and testified that the counselor did not perform any testing, that they "just had conversation," and that he did not have any follow-up visits despite the counselor's recommendation.

{¶ 15} Respondent did not present any other evidence to satisfy the four-pronged test in BCGD Proc.Reg. 10(B)(2)(g), which requires proof of (i) a diagnosis of mental disability by a qualified health-care professional, (ii) a determination that mental disability contributed to cause the misconduct, (iii) a sustained period of successful treatment, and (iv) a prognosis from a qualified health-care professional that the attorney will be able to return to competent, ethical professional practice under specified conditions. The board therefore did not attribute significant mitigating effect to any claimed mental disability. We accept that determination, although we share the board's concern about respondent's failure to seek help for his depressed condition.

{¶ 16} As to aggravation, the board weighed against respondent factors including how he delayed in returning his former client's original papers to the investigator and finally simply mailed them instead of delivering them as requested. He also did not make restitution until after his client's grievance. His repeated failures to address the inquiries of his client, the client's new lawyer, and relator's investigator also showed to the board a pattern of misconduct. See BCGD Proc.Reg. l0(B)(l)(c).

{¶ 17} Of particular significance to the board was the harm respondent caused this vulnerable first-time client. See BCGD Proc.Reg. 10(B)(2)(1)(h). Adopting the panel's report, the board aptly observed:

{¶ 18} "[W]e note that while Respondent made full monetary restitution, his conduct caused significant emotional turmoil and intra-family strife to his client. We view that damage as significant in as much as [sic] repayment of monetary damages in this case will likely do nothing to remediate the family mistrust caused by Respondent. [The client] requested that Respondent be disbarred because of the stressful emotional damages caused. The Panel, however, is constrained by case law and the necessity to impose a sanction proportional to sanctions in other similar cases. Our failure to impose [the

client's] requested sanction, however, does not mean that the Panel takes lightly [his] injury or the fact that he and his family have paid a price that cannot be evaluated solely with regard to the money at issue or adequately remedied by the disciplinary process."

{¶ 19} Though the parties agreed to a public reprimand as the appropriate sanction, the board relied on *Cincinnati Bar Assn. v. Forg,* 97 Ohio St.3d 495, 2002-Ohio-6727, 780 N.E.2d 582, in recommending a one-year suspension and six-month stay on conditions. Adopting the panel's analysis, the board reasoned:

{¶ 20} "In *Forg,* the attorney accepted a $1,000 retainer and $250 filing fee to represent a client in the dissolution of her marriage. After depositing the funds in her client trust account, Forg used the funds for her own purposes and failed to respond for over four months to her client's phone calls and letters about the case. Upon receipt of a settlement proposal and actuarial report from her client's husband, Forg neglected to forward either document to her client. Forg also ignored her client's request to return her file and any unused funds. Forg returned the client's money to her only after she filed a grievance, and did not return the client's file. Forg also failed to respond to the Cincinnati Bar Association's grievance complaint. Forg was found to have neglected a legal matter entrusted to her, engaged in conduct involving dishonesty, used client funds for her own purposes, inappropriately accounted for those funds, and failed to promptly pay or return to the client funds or property that the client was entitled to receive. Forg was suspended from practice for one year, with six months stayed.

{¶ 21} "As in *Forg,* Respondent is before us on only one client's complaint, but a complaint alleging a complete lack of communication with that one client and a failure to return the client's funds and documents despite repeated requests. Though there was not an allegation related to the inappropriate use of client funds in this case, Respondent's admission that he was unable to locate his

trust checkbook and was unsure of his account balance suggests to this Panel that Respondent's IOLTA account was not well managed. Both Respondent and Forg returned their client's funds after a grievance was filed. Unlike Forg, however, Respondent returned his client's documents and participated throughout the disciplinary process.

{¶ 22} "However, we find Respondent's case permeated by a larger problem related to possible depression and physical difficulties. Respondent failed to address such circumstances or explain how he intended to improve his office management * * *. It is clear to the Panel that, if sanctioned by a public reprimand as recommended by Relator, Respondent's pattern of delay in attending to pending matters will persist and remain unresolved. So, too, will his admitted but untreated depression. Respondent expressed remorse for his conduct but appears unenthusiastic in his desire to continue in the practice of law and uncommitted to the steps necessary to prevent further misconduct. Therefore, we recommend that Respondent be suspended from the practice of law in Ohio for one year, with six months stayed upon the following conditions:

{¶ 23} "1. Respondent shall complete a law-office management course, which includes a component of instruction on managing an attorney's IOLTA account and handling client communications;

{¶ 24} "2. Respondent shall obtain the requisite number of CLE [continuing legal education] credits as required to return to or maintain compliance with Gov.Bar R. X;

{¶ 25} "3. Respondent shall enter into a treatment contract with the Ohio Lawyers Assistance Program ["OLAP"] for a minimum of 24 months whereby he is obligated to obtain a mental health assessment and pursue treatment as determined by OLAP; [and]

{¶ 26} "4. Respondent [shall] commit no further misconduct during the six month stay."

**{¶ 27}** We accept the board's recommendation, including a condition added by the board in adopting the panel report. In effect, the board also recommended that respondent successfully complete a six-month monitored probation, under the supervision of an attorney appointed by relator and pursuant to Gov.Bar R. V(9), upon reinstatement to practice under the stayed suspension.

**{¶ 28}** Respondent is therefore suspended from the practice of law in Ohio for one year; however, the last six months of the suspension are stayed on the following conditions:

**{¶ 29}** 1. Respondent shall complete a course in law-office management that includes a component of instruction on managing an IOLTA account and handling client communications;

**{¶ 30}** 2. Respondent shall obtain the requisite number of continuing-legal-education credits as required to return to or maintain compliance with Gov.Bar R. X;

**{¶ 31}** 3. Respondent shall enter into a treatment contract with the Ohio Lawyers Assistance Program for a minimum of 24 months whereby he is obligated to obtain a mental-health assessment and pursue recommended treatment;

**{¶ 32}** 4. Respondent shall commit no further misconduct during the six-month stay; and

**{¶ 33}** 5. Upon reinstatement, during the stayed portion of his suspension, respondent shall serve a six-month monitored probation, pursuant to Gov.Bar R. V(9).

**{¶ 34}** If respondent fails to comply with the terms of the stay, the stay will be lifted, and respondent will serve the entire one-year suspension from practice. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Rand, Gurley, Hanahan & Koerner, L.L.C., and James P. Koerner, for relator.

Frank J. Rozanc, pro se.

_____